NOTICE

Decision filed 07/17/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200195-U

NO. 5-20-0195

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-499 |
| | ) | |
| KENDALL WILLIAMS, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's dismissal of defendant's motion for leave to file a postconviction petition at the second stage is vacated where postconviction counsel failed to amend the petition adequately to represent defendant's claims.

¶ 2    Defendant appeals the second stage-dismissal of his postconviction petition. On appeal, defendant argues that his case should be remanded for further proceedings because his appointed counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the following reasons, we agree.

¶ 3                                   I. BACKGROUND

¶ 4    On May 15, 2015, defendant was charged by grand jury indictment with first degree murder in violation of section 9-1(a) of the Criminal Code of 2012 (720 ILCS 5/9-1(a)(1) (West 2014)),

1

in that defendant, without lawful justification and with the intent to kill, shot Kenyon Logan in the head with a firearm, thereby causing his death on March 22, 2015.

¶ 5    On September 22, 2016, the parties presented a negotiated plea agreement. Pursuant to the agreement, defendant would plead guilty to the charge of first degree murder in an amended indictment stating defendant "injured [Logan] with a dangerous weapon," which would eliminate the firearm enhancement. In exchange, the State agreed to a joint sentencing recommendation of 29 years' imprisonment to be served at 100%, followed by 3 years of mandatory supervised release (MSR). The State further agreed to dismiss 15-CF-500, a two-count criminal indictment charging defendant with armed robbery with firearm enhancements on those two counts.

¶ 6    The court admonished defendant pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). Defendant replied that he was 19 years old, could read and write, was not taking any drugs or medication, and had sufficient time to talk to his counsel about his case. He further stated that he understood both the original and amended charges, discussed with his attorney the significance regarding the use of the firearm, the potential length of sentence for the charge for which he was pleading guilty, and the constitutional rights he would waive by pleading guilty. Defendant stated that he understood there would not be a trial, and he wished to waive his trial rights and proceed to a plea. He further stated that, except for the agreement presented by the State, no one made any other promise or threatened him in any way for him to plead guilty.

¶ 7    The State provided a factual basis stating Howard Dotson would testify that he saw defendant and Charles Christian walking down the street and they got into his car which already contained Melvin Blue as a passenger. Dotson would further testify as to defendant's statement that Logan and his brother previously jumped him, and that Dotson stopped the vehicle to let defendant and Christian out of the car.

2

¶ 8     Charles Christian would testify that defendant held him hostage with a gun. Christian would further testify that as they were driving, they saw Logan, defendant indicated an intent to kill Logan, and defendant later asked Dotson to let him out of the car. Christian's testimony would further indicate that he did not want to get out of the car, but defendant had a gun on him and told him to get out. He and defendant then approached Logan, shook Logan's hand. Afterwards, defendant injured Logan and told Christian not to snitch or he would pop him.

¶ 9     Natisha Johnson would testify that defendant came to her house and knocked on her door that same evening. She would further testify that defendant appeared terrified and when she asked defendant what was wrong, he stated he would have to kill her if he told her. The remainder of the witness testimony addressed the arrest of defendant and statements he provided following a waiver of his *Miranda* rights.

¶ 10    The court inquired whether defense counsel agreed the State had witnesses who would testify as indicated. Counsel agreed the State had sufficient witness testimony to prove first degree murder beyond a reasonable doubt, but stated, "We'd have some doubt of someone holding someone hostage, or whatever it was mentioned. We wouldn't agree to that." Defense counsel acknowledged that it was "not really an element of the offense" and again stated his belief that the State could prove first degree murder.

¶ 11    The circuit court accepted the plea, dismissed the indictment, entered judgment on defendant's plea to the information, and sentenced defendant to 29 years in the Illinois Department of Corrections, followed by 3 years of MSR. The court admonished defendant that the sentence would be served at 100%, but he would get credit for time served in the county jail. Thereafter, the court advised defendant of his appeal rights. Defendant did not file a motion to withdraw his guilty plea or appeal the trial court's judgment.

3

¶ 12    On December 17, 2018, defendant filed a *pro se* postconviction petition and a supporting affidavit. The petition alleged, *inter alia*, that his plea counsel was ineffective by failing to (1) subject the State's case to a meaningful adversarial testing and utterly failed to defend against the charges; (2) withdraw defendant's guilty plea despite a request from defendant and therefore failed to preserve his right to appeal; (3) consult with experts; (4) file for financial aid for experts; (5) file a motion to dismiss as the indictment was over 30 days and untimely; (6) file a motion to dismiss the indictment which was based on an incompetent witness who made inconsistent statements and texted defendant with messages that implicated the witness; and (7) ensure defendant's right to a speedy trial was not violated by requesting continuances without consulting defendant prior to making the request. Defendant's affidavit stated that during his incarceration, he made many requests for his attorney to contact Melvin Blue and Howard Dotson, but his lawyer never did. He further stated his lawyer "drilled into his head" that he would not win and should try to get a deal. The affidavit stated that Blue would have testified that Blue, Christian, and Dotson agreed to put the crime on defendant because they were all lifelong friends and defendant only knew them for a couple of months. The affidavit further stated that if his counsel had spoken with Blue and Dotson, he would have gone to trial, and he could have proven his innocence.

¶ 13    On March 4, 2019, the circuit court entered an order finding defendant's postconviction petition set forth the gist of a constitutional claim and appointed postconviction counsel. On May 30, 2019, Paul Storment III was substituted as postconviction counsel for defendant.

¶ 14    On September 3, 2019, postconviction counsel filed an amended petition for postconviction relief. The petition alleged that defendant was denied effective assistance of counsel because his plea counsel (1) requested continuances mostly without defendant's appearance or consent, violating his statutory speedy trial rights, and (2) mostly ignored defendant's desire to proceed

with a jury trial. The petition further alleged defendant "finally thought he had no other choice but to plead guilty," so he did not sit in the St. Clair County jail any longer. The petition also asserted a claim of actual innocence, contending Christian fired the gun. It also argued that the claim that Christian was held hostage by defendant and was not involved in the planning or execution of the murder "was not tested at trial in this matter and was not thoroughly investigated" by either the State or defendant's attorneys. In support of the petition, postconviction counsel attached copies of the orders granting continuances, notes from plea counsel's file for defendant, plea counsel's correspondence to defendant, and defendant's correspondence to plea counsel. On October 21, 2019, postconviction counsel filed a Rule 651(c) certificate, stating he consulted with defendant "by mail and in person to ascertain his or her contentions of deprivation of constitutional rights," examined the record of proceedings from the guilty plea and sentencing hearings, and made amendments to the *pro se* petitions necessary for an adequate presentation of defendant's claims.

¶ 15     The State moved to dismiss the amended petition, arguing it failed to meet the *Strickland* test. The State further argued that portions of the petition were rebutted by the record and defendant's claim of innocence was inadequately supported and based on evidence known at the time the guilty plea was entered. Postconviction counsel filed a response, requesting a denial of the State's motion.

¶ 16     A hearing on the State's motion to dismiss was held on June 5, 2020. The State argued that the amended petition failed to make a substantial showing of a constitutional violation as it failed to show that plea counsel's performance fell below an objective standard of reasonableness and resulted in prejudice.

¶ 17     Postconviction counsel argued that the petition demonstrated a constitutional violation stemming from the ineffective assistance of plea counsel based on the asserted speedy trial

5

problem, defendant's consistent assertion of innocence, and a plausible defense that the State's witness was the individual who pulled the trigger. Postconviction counsel stated, "it comes down to a question of fact that [defendant] felt compelled to plead guilty to this." He admitted that the record showed defendant pled guilty after full admonishments but posed that it was equally clear that defendant was a frustrated 18-year-old, who did not know what was going on and was following his attorney's lead. Postconviction counsel argued that the State was jumping the gun by filing a motion to dismiss, and he believed there were factual issues that need to be explored regarding why defendant "went from some other person did it and I want to go to trial and I want to get this over with" to "okay, fine, whatever, I'll just plead guilty and accept the sentence, which is rather extensive."

¶ 18    Upon the court's inquiry, postconviction counsel agreed that defendant would have faced 45 years to natural life had he proceeded to trial, the firearm enhancement was dropped by virtue of the plea which made the potential sentencing range 20 to 60 years' imprisonment, and defendant was ultimately sentenced to the lower end of that range at 29 years' imprisonment. Thereafter, the court addressed the actual innocence claim and inquired whether defendant would still have faced a charge of murder under an accomplice theory since defendant never denied the fact that he was with the alleged shooter. Postconviction counsel stated that accomplice liability would imply he was complicit and the letters to counsel indicated he was not.

¶ 19    The court addressed the decision in *People v. Reed*, 2019 IL App (4th) 170090, that held a defendant could not assert a claim of actual innocence if he pled guilty. The court found invited error doctrine applied to both his guilty plea and the voluntary waiver of the jury trial, and *Reed* foreclosed an innocence claim.

¶ 20    The court further found defendant's argument that he had to plead guilty because plea counsel ignored his right to a jury trial was meritless, given the fact that he was fully admonished before pleading guilty and trial was set for 2½ weeks later. The court also addressed the right to speedy trial, stating it was not a fundamental right, and defense counsel's requests for continuances would fall under trial strategy.

¶ 21    Thereafter, the court granted the State's motion to dismiss and advised defendant of his appeal rights. Defendant timely appealed.

¶ 22                                II. ANALYSIS

¶ 23    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a three-stage process by which defendants may collaterally challenge their convictions and/or sentences for substantial violations of their federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). At the first stage, a court will dismiss a petition if it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If a petition is not dismissed, the court advances the petition to second-stage proceedings and may appoint counsel for an indigent defendant. *People v. Cotto*, 2016 IL 119006, ¶¶ 26-27.

¶ 24    Because the right to counsel in postconviction proceedings is statutory rather than constitutional, defendant is entitled to the level of assistance guaranteed by the Act, which is reasonable assistance. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 29. Reasonable assistance is less than the constitutionally-required effective assistance of counsel. *Cotto*, 2016 IL 119006, ¶ 45. Nevertheless, "the statute contemplates that the attorney appointed to represent an indigent petitioner will ascertain the basis of the petitioner's complaints, shape those complaints into appropriate legal form and present the prisoner's constitutional contentions to the court." *People v. Johnson*, 154 Ill. 2d 227, 237-38 (1993).

7

¶ 25　　To ensure that defendants receive the level of assistance required by the Act, Rule 651(c) imposes specific duties on counsel. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Rule 651(c) requires postconviction counsel to (1) consult with petitioner to ascertain his or her contentions of deprivation of constitutional rights, (2) examine the record of the proceedings, and (3) make any amendments to the *pro se* petition that are necessary for an adequate presentation of petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 26　　On appeal, defendant contends counsel failed to comply with Rule 651(c). Specifically, he argues postconviction counsel failed to adequately amend the *pro se* postconviction petition.

¶ 27　　We, however, first address the State's contention that Rule 651(c) does not apply to new claims asserted by counsel in the amended petition. In support, the State relies on *People v. Cotto*, 2016 IL 119006. Another panel from this appellate district recently rejected this argument in an unpublished Rule 23 order, *People v. Williams*, 2023 IL App (5th) 210322-U, ¶¶ 32-39.[1] The State asserts the same arguments as that in *Williams*, and we decline to change our position.

¶ 28　　Nothing in *Cotto* suggests Rule 651(c) is inapplicable to a new claim raised by counsel in an amended petition. *Cotto* does not regard the applicability of Rule 651(c), as it held all postconviction petitioners—regardless of *pro se* status—are entitled to reasonable assistance. See *Cotto*, 2016 IL 119006, ¶¶ 41-42. We acknowledge the *Cotto* court noted, "Rule 651(c) applies only to a postconviction petition initially filed by a *pro se* defendant." *Id.* ¶ 41. To support such statement, the court cited *People v. Richmond*, 188 Ill. 2d 376, 381-83 (1999), which also explained that Rule 651(c) applied when a petitioner files a *pro se* petition, irrespective of whether he or she was later appointed counsel or retained private counsel. These statements offer nothing more than

---

[1]Citing as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023).

to say Rule 651(c) is applicable only where the initial postconviction petition is filed by a *pro se* petitioner. *Cotto*, 2016 IL 119006, ¶ 25. Accordingly, *Cotto* is not instructive.

¶ 29    The State's argument improperly assumes new claims added by counsel in the amended petition are not the defendant's claims of constitutional error. "[T]he attorney-client relationship is a fiduciary relationship." *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 9 (2004). Counsel can make decisions regarding strategy and tactics on defendant's behalf (see *People v. Phillips*, 217 Ill. 2d 270, 281 (2005)), and parties are generally bound by the actions and omissions of their counsel (*Horwitz*, 212 Ill. 2d at 9). While counsel is not required to add new claims to the amended petition (*People v. Davis*, 156 Ill. 2d 149, 164 (1993)), when he or she does, the new claims are defendant's claims of constitutional error. The plain language of Rule 651(c)—that postconviction counsel must adequately present petitioner's "contentions of deprivation of constitutional rights" (Ill. S. Ct. R. 651(c) (eff. July 1, 2017))—therefore requires counsel to adequately present any new claims in an amended petition. "We fail to see how it can be reasonable assistance of counsel for an attorney to identify claims worth pursuing but then fail to shape them into proper form." *People v. Addison*, 2023 IL 127119, ¶ 26.[2]

¶ 30    Whether postconviction counsel provided reasonable assistance in compliance with Illinois Supreme Court Rule 651(c) is reviewed *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007). Where, as here, counsel files a Rule 651(c) certificate, there is a presumption that the petitioner received the representation the rule requires. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. This presumption, however, can be rebutted by the record. See *Johnson*, 154 Ill. 2d at 248-50; *People v. Perkins*, 229 Ill. 2d 34, 52 (2007).

---

[2]We acknowledge *Addison* does not address whether Rule 651(c) applies to new claims added to an amended petition; however, we find its statement is supportive of our view.

¶ 31    Defendant argues that the record rebuts the presumption of compliance because counsel failed to allege the required prejudice for his ineffective assistance of counsel claims. We agree.

¶ 32    Postconviction counsel need not file an amended petition in every case. *Wallace*, 2018 IL App (5th) 140385, ¶ 30. However, as noted above, postconviction counsel must adequately present defendant's contentions of error. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). To adequately present a claim of ineffective assistance of counsel, the petition must allege counsel's performance fell below an objective standard of reasonableness and counsel's errors resulted in prejudice. *People v. Bailey*, 2020 IL App (5th) 160458, ¶ 86. To establish prejudice in the context of a guilty plea, however, defendant must show that but for the alleged error, he would have rejected the plea and proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Accordingly, to present defendant's ineffective assistance claims in proper legal form, postconviction counsel must have alleged that defendant would have rejected the plea and proceeded to trial had plea counsel not requested continuances and demanded a trial within the statutory speedy trial period.

¶ 33    The amended petition here lacks any allegations or facts indicating that plea counsel's actions resulted in the required prejudice. There is no explicit allegation that but for plea counsel's errors, defendant would have rejected the plea and proceeded to trial. Postconviction counsel also failed to provide any facts to explain how continuing the case for over a year and failing to demand trial within the statutory speedy trial period in section 103-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2018)) harmed defendant in any way.

¶ 34    The closest allegation of prejudice in the amended petition is the statement that "[d]efendant finally thought he had no other choice but to plead guilty *** so that he did not sit in the St. Clair County Jail any longer." Because defendant's actual decisions shed no light on what he would have done (see *United States v. Thompson*, 27 F.3d 671, 677 (D.C. Cir. 1994) ("the

10

choices that [defendant] *actually made* do not necessarily shed any useful light on the choices that he *would have made* if he had been properly advised" (emphases in original))), the fact that he felt like he had no choice but to plead guilty due to counsel's actions does not imply he would have made a different choice had counsel provided the opportunity for trial within the statutory speedy trial period. A desire to get out of jail also does not imply that defendant would have rejected a plea and proceeded to trial had plea counsel demanded trial within the statutory speedy trial period.[3] See *People v. Morgan*, 2021 IL App (5th) 200105-U, ¶¶ 27, 34 (finding counsel did not present defendant's ineffective assistance claim in proper legal form and failed to comply with Rule 651(c) by failing to allege prejudice with a "nexus between the various allegations in the amended petition and how trial/plea counsel's inadequacies, as alleged in the amended petition, led the defendant directly into what he termed a 'coerced' plea agreement").[4] The statement indicates—at most—that defendant did not have a choice. A right to choose is insufficient to allege prejudice. See *People v. Rivera*, 2014 IL App (2d) 120884, ¶ 13. Rather, to allege prejudice under these circumstances, the petition needed to allege defendant's choice would have been to reject the plea offer and proceed to trial had counsel filed a motion for a speedy trial.

¶ 35    Rule 651(c) is not merely a formality; rather it ensures that postconviction petitioners receive proper representation when asserting their constitutional claims. *Suarez*, 224 Ill. 2d at 47. Because prejudice is an essential element of an ineffective assistance of counsel claim, postconviction counsel failed to shape defendant's ineffective assistance of counsel claims into

---

[3]We further note such statement—alone—is insufficient to invalidate a plea, as there is no alleged nexus between the jail conditions and defendant's decision to plead guilty. See *People v. St. Pierre*, 146 Ill. 2d 494, 507-08 (1992) (the desire to leave jail is insufficient to show defendant was coerced into pleading guilty; rather he must "demonstrate a necessary nexus between the alleged coercive conditions at the jail and his guilty plea").

[4]Citing as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023).

11

proper legal form. *People v. Turner*, 187 Ill. 2d 406, 413 (1999); *People v. Dixon*, 2018 IL App (3d) 150630, ¶¶ 16, 20; *People v. Jennings*, 345 Ill. App. 3d 265, 273-74 (2003); *People v. McDonald*, 2018 IL App (3d) 150507, ¶¶ 29-31.

¶ 36 Accordingly, the record rebuts the presumption that postconviction counsel complied with Rule 651(c). See *People v. Frank*, 2021 IL App (3d) 180159-U, ¶ 16, *appeal denied*, 175 N.E.3d 68 (Ill. 2021).[5] We therefore vacate and remand for the appointment of new postconviction counsel who should comply with Rule 651(c) and amend the petition as necessary. See *Addison*, 2023 IL 127119, ¶¶ 34, 42 (when counsel presents claims in an improper legal form, Rule 651(c) is violated, and remand is required regardless of whether the claims have merit).

¶ 37 We also remand for the circuit court to consider the merits of defendant's innocence claim. Our review of a dismissal at the second stage of postconviction proceedings is *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 38 The circuit court here found *Reed*, 2019 IL App (4th) 170090—which held defendants who plead guilty may not assert an innocence claim—was fatal to defendant's innocence claim. In 2020, while defendant's appeal was pending, the Illinois Supreme Court criticized that finding and held guilty plea defendants may assert an innocence claim under a new standard that the defendant "provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *People v. Reed*, 2020 IL 124940, ¶¶ 37, 49. While the circuit court was not privy to the Illinois Supreme Court decision before its ruling, we must find it was in error. See *People ex rel. Law v. Dix*, 280 Ill. 158, 159 (1917) ("We are bound to dispose of the case under the law in force when our decision is rendered and not as it was at the time of judgment in the circuit court."). As a result of this error, the circuit court did not determine

---

[5]Citing as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023).

defendant's claim on the merits. Accordingly, we find the appropriate action is to remand so that new counsel can amend the petition in light of the new standard set forth in *Reed*, if necessary, and the court can consider the claim on its merits in the first instance. See *People ex rel. Hartigan v. Northern Illinois Mortgage Co.*, 201 Ill. App. 3d 356, 360-61 (1990).

¶ 39 Because we remand for compliance with Rule 651(c) and consideration of defendant's innocence claim, we decline to resolve defendant's argument that postconviction counsel failed to support the petition's claims. We, however, briefly note that reasonable assistance does not require counsel "to engage in a generalized fishing expedition in search of support for claims raised in a petition." *Johnson*, 154 Ill. 2d at 248. It is defendant's responsibility to provide counsel with the information necessary to support his or her claims. *Id.* at 247-48. Accordingly, on remand, defendant should provide new counsel with information necessary to support his claims, and counsel should attach such supporting evidence, if any exists.

¶ 40                                     III. CONCLUSION

¶ 41 For the foregoing reasons, we vacate the circuit court's judgment and remand for appointment of new counsel, who should comply with Rule 651(c) in amending defendant's petition, and a new second-stage hearing.


¶ 42 Vacated and remanded.